**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LKQ CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-2741 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| DONALD FENGLER, ) | |
| an individual, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff LKQ Corporation sued Donald Fengler, alleging that Fengler breached his confidentiality, non-competition, and non-solicitation agreement, and violated the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1, *et seq.*, when he went to work for one of LKQ's competitors, Allied Auto Salvage, Inc. In addition to its three-count complaint [1], LKQ has filed an emergency motion for a temporary restraining order and other relief [6]. For the reasons set forth below, the Court denies LKQ's motion [6].

**I.    Background**

This case involves the aftermarket automobile parts industry, which Plaintiff describes as "highly competitive and subject to intense price competition." (Compl. ¶ 6.) Plaintiff LKQ Corporation is a national supplier of salvage and aftermarket automobile parts to body shops, mechanical repair shops, and other suppliers. Defendant Donald Fengler is a former employee of LKQ who, until recently, worked as an outside buyer for one of LKQ's wholly-owned subsidiaries.

In 2004, Fengler began working as a purchaser for Team Truck Dismantling ("Team Truck"). Team Truck is a California corporation with its principal place of business in

California. All of the work that Fengler performed in connection with his Team Truck employment was in California. On September 8, 2011, Pick-Your-Part Auto Wrecking ("Pick-Your-Part"), a wholly-owned subsidiary of LKQ, acquired Team Truck. Pick-Your-Part was and is a California corporation with its principal place of business in California.

Upon Pick-Your-Part's acquisition of Team Truck, Fengler was presented with the "LKQ Corporation Confidentiality, Non-Competition and Non-Solicitation Agreement" ("the Agreement"). The Agreement stated, in part, that "in consideration of Employee's employment by and with [LKQ] or one of its subsidiaries (this Agreement being a condition of such employment), [LKQ] and Employee agree to": (1) keep all confidential information confidential, both during and after employment with LKQ, and return all confidential information to LKQ upon termination of employment for any reason; (2) not compete with any of LKQ's competitors for nine months following termination of employment, and within a 75-mile radius of any LKQ facility in which the employee worked; and (3) not solicit any of LKQ's customers for nine months following termination of employment. The Agreement included both a choice-of-law clause and a forum selection clause. Fengler's boss, Ted Smith, told Fengler that he was required to sign the Agreement as a condition of his continued employment as an outside buyer with Pick-Your-Part. Fengler signed the Agreement in California on September 13, 2011.

As an outside buyer for Pick-Your-Part, Fengler attended auctions, travelled to dealerships, and met with towing companies and auto repair garages to purchase vehicles for the company. As part of his employment, and to assist with his evaluation of vehicles for purchase, Fengler received LKQ's pricing book. LKQ's pricing book contains vehicle grades based on its evaluation of several benchmarks, including the volume of sales of parts from particular

vehicles, inventory levels of vehicles, and other factors. LKQ assembled the pricing book using confidential and proprietary information not available in the public domain.

On March 23, 2012, after working for Pick-Your Part for six months, Fengler left the company and immediately began working for Pick-Your-Part's competitor, Allied Auto Salvage, Inc. Allied is a California corporation with its principal place of business in California. All of the work that Fengler performs as an outside buyer for Allied is done in California.

On April 13, 2012, LKQ filed its three-count complaint in this case, alleging breach of the Agreement and violation of the ITSA, and seeking preliminary and permanent injunctive relief. Along with its complaint, LKQ moved for a temporary restraining order under Federal Rule of Civil Procedure 65. In its motion, LKQ requests that the Court enter an order: (1) restraining and enjoining Fengler from competing against LKQ or any of its affiliated companies, within seventy-five miles of LKQ's present or former facilities in Riverside, San Bernardino, and Hesperia, California; (2) restraining and enjoining Fengler from soliciting any LKQ suppliers with which Fengler had business dealings during his employment with LKQ; (3) restraining and enjoining Fengler from using, disclosing, or transmitting LKQ's confidential information; and (4) entering a mandatory injunction that Fengler return all confidential information to LKQ, and ordering him to account for any profits obtained from its use.

In response, Fengler argues that LKQ's motion must fail because LKQ cannot show a likelihood of success on the merits. Specifically, Fengler contends that California, not Illinois, law applies here and that under California law, LKQ has no chance of success on the merits on either of its two claims. Fengler also attests that (1) he destroyed the pricing book at or about the time that he left his employment with Pick-Your-Part; (2) he did not make or keep any copies of the pricing book or provide the book to any other person or entity; and (3) since leaving Pick-

Your-Part, he has never used or disclosed to anyone any information from the pricing book, either by consulting the physical manual or from his own recollection.

## II.     Analysis

### A.     Personal Jurisdiction

Before reaching the merits of LKQ's motion, the Court will first address Fengler's argument that this Court lacks personal jurisdiction over him. Fengler concedes that a valid forum-selection clause is enough to confer personal jurisdiction. See *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989); *Ace Hardware Int'l Holdings, Ltd. v. Masso Expo Corp.*, 2011 WL 5077686, at *6 (N.D. Ill. Oct. 25, 2011) ("A defendant may waive the ability to challenge personal jurisdiction by consenting to an enforceable forum selection clause."); *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. May 23, 2011) ("Waiving objections to personal jurisdiction via a valid forum selection provision renders any examination of the defendant's contacts with the forum state unnecessary."). He argues, however, that the forum-selection clause at issue in this case is invalid for lack of consideration. According to Fengler, because the entity that employed Fengler – Pick-Your-Part – is not the entity that extracted the promise that LKQ seeks to enforce, Fengler has not properly consented to jurisdiction in Illinois. Moreover, Fengler contends that the agreement was presented to him as a condition of continued employment at the time that Pick-Your-Part acquired Team Truck and California law prohibits such tactics. See *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 292 (Cal. 2008).

Although there are disputed issues of fact as to whether the Agreement and its forum-selection clause are enforceable, the Court need not delve deeply into that thicket at this time. Even assuming for the present exigent circumstances that the Court does have personal

4

jurisdiction over Fengler, LKQ has not presented sufficient evidence to warrant the grant of a temporary restraining order in any event.[1]

### B. Motion for a Temporary Restraining Order

The Court turns to LKQ's motion for a temporary restraining order. Like all forms of injunctive relief, a temporary restraining order is "an extraordinary remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A party seeking a temporary restraining order must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets this burden, then the court must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). Finally, the court considers the public interest served by granting or denying the relief, including the effects of the relief on non-parties. *Id.*; see also *Credit Suisse First Boston, LLC v. Vender*, No. 04 C 7631, 2004 WL 2806191, at *1 (N.D. Ill. Dec. 3, 2004). The court then weighs all of these factors, "sitting as would a chancellor in equity," *Abbott*, 971 F.2d at 12, and applies a "sliding scale" approach, under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).

---

[1] Fengler remains free to file a motion to dismiss LKQ's complaint on the basis of lack of personal jurisdiction if he so desires.

### 1. Likelihood of Success on the Merits

A party seeking a TRO or a preliminary injunction must demonstrate "that it has a 'better than negligible' chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). This is an "admittedly low requirement." *Id.*

#### a. Choice of Law

The parties dispute whether Illinois or California law should govern the analysis of the merits of LKQ's claims. In a diversity case like this one, the Court applies the choice-of-law rules of the forum state to determine which state's substantive law will govern. See *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 706 (7th Cir. 1995) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Illinois courts have adopted the approach set forth in the Restatement (Second) of Conflict of Laws, which provides that a contract's choice-of-law provision will govern unless: "(1) the chosen state has no substantial relationship to the parties or the transaction; or (2) application of the chosen law would be contrary to a fundamental public policy of a state with a materially greater interest in the issue in dispute." *Brown and Brown, Inc. v. Mudron*, 887 N.E.2d 437, 439-40 (Ill. App. Ct. 3d Dist. 2008) (citing Restatement (Second) of Conflict of Laws, § 187 (1971)).

Here, the Agreement includes a specific choice-of-law provision, identifying the laws of the State of Illinois as the relevant substantive law governing the Agreement. (Compl., Ex. 1 ¶ 7.) Fengler argues that despite the contract's choice-of-law provision, California law applies to both of LKQ's claims because (1) application of Illinois law would contravene California's fundamental policy against noncompetition clauses, and (2) under the facts of this case, California has a materially greater interest than does Illinois.

The Court agrees that Illinois courts would apply the substantive law of California to LKQ's breach of contract claim. California has a strong and long-standing public policy that favors open competition over the common law "rule of reasonableness" governing contractual restraints on the practice of a profession, business, or trade. See *Edwards*, 189 P.3d at 288 (stating that "California settled public policy in favor of open competition" in 1872 with the enactment of Bus & Prof. Code § 16600); *Bosley v. Med. Group v. Abramson*, 207 Cal. Rptr. 477, 480 (Cal. Ct. App. 2d Dist. 1984) ("At least since 1872, a noncompetition agreement has been void unless specifically authorized by [statute]."). Section 16600 of the California Business and Professional Code states that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."[2] In the years since its enactment, California courts "have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." *Edwards*, 189 P.3d at 288; see also *id.* at 289 ("[F]ollowing the Legislature, this court generally condemns noncompetition agreements."). In 1988, the Seventh Circuit commented that "California is the leading jurisdiction on the other side [of the debate over the enforceability of restrictive employment covenants], treating almost all restrictive agreements, including many trade secret agreements, as interfering with the public's interest in obtaining the benefits of competition." *Schlumberger Tech. Corp. v. Blaker*, 859 F.2d 512, 516 (7th Cir. 1988). And there does not appear to have been any softening of that position in the years since.

In fact, in 2008, the California Supreme Court reaffirmed this policy, holding that a noncompetition agreement, which prohibited an employee from working for or soliciting certain of the employer's clients for limited periods following the employee's termination, was invalid. *Edwards*, 189 P.3d at 290. The court made clear that "California courts have not embraced the

---

[2] The parties agree that this case does not fall within any of the exceptions set forth in the Code.

\* \* \* narrow-restraint exception." *Id.* at 291. The court also expressed its view that "section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." *Id.* (quotation omitted). Further, California cases decided after *Edwards* have expressed doubt as to the continued viability of any trade secret exception that would permit a contractual, rather than a tortuous or statutory, basis to enjoin a former employee's misuse of trade secrets to solicit former customers.[3] See, *e.g.*, *Ret. Group v. Galante*, 98 Cal. Rptr. 3d 585, 593 (Cal. Ct. App. 4th Dist. 2009); *Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118, 127 n.6 (D. Mass. 2011) (recognizing that "some California courts have questioned the vitality of the \* \* \* line of cases defining the trade secrets exception to Section 16600"). In light of *Edwards*, it is clear that the Illinois courts would conclude that California's public policy against restraints on employment are strong enough and of such a fundamental nature as to "justify overriding the chosen law of the parties." *Potomac Leasing Co. v. Chuck's Pub Inc.*, 509 N.E.2d 751, 753-54 (Ill. 1987).

California also has a materially greater interest in this case than does Illinois. Fenger is a resident of California and has been all of his life. He has never travelled to Illinois, nor has he ever conducted any business here. Fenger was employed by Team Truck, a California company with its principal place of business in California. All of the work that Fenger did for Team Truck was in California. The company that acquired Team Truck – Pick-Your-Part – is also a California corporation with its principal place of business in California. All of the work that Fenger did for Pick-Your-Part also took place in California. Finally, the company that currently

---

[3] A lengthy line of California cases has held that "a former employee may be barred from soliciting existing customers to redirect their business away from the former employer and to the employee's new business *if the employee is utilizing trade secret information* to solicit those customers." *Ret. Group v. Galante*, 98 Cal. Rptr. 3d 585,593 (Cal. Ct. App. 4th Dist. 2009)) (collecting cases). "Although *Edwards* reaffirmed the broad California rule that invalidates noncompetition agreements falling outside of statutorial-prescribed exceptions, *Edwards* expressly stated it was not 'address[ing] the applicability of the so-called trade secret exception to section 16600.'" *Ret. Group*, 98 Cal. Rptr. 3d at 592 (quoting *Edwards*, 189 P.3d at 289 n.4).

8

employs Fenger – Allied – is a California corporation with its principal place of business in California. All of the work that Fenger has done and will do for Allied is in California. The fact that Pick-Your-Part is wholly-owned by LKQ, which has its principal place of business in Illinois, and the fact that the Agreement was drafted in Illinois does give Illinois some interest in this case. But California's interest is materially greater. Indeed, it would be odd to use Illinois law to resolve a California-centered dispute between two California companies over a California employee about events that transpired in California. In sum, because California has, as a matter of fundamental public policy, "chosen to provide its workers greater protections" from noncompetition provisions, and because California "has a materially greater interest in this dispute than does" Illinois, the Court concludes that California law applies to LKQ's contractual claims. See *Brown and Brown, Inc.*, 887 N.E.2d at 440.

LKQ's claim under the ITSA may also be contrary to California's fundamental public policy. At least one California court has held that the doctrine of inevitable disclosure "is contrary to California law and policy because it creates an after-the-fact covenant not to compete restricting employee mobility." *Whyte v. Schlage Lock Co.*, 125 Cal. Rptr. 2d 277 (Cal. Ct. App. 4th Dist. 2002). LKQ insists that its ITSA claim does not rest solely on that doctrine. But, as explained below, the Court is not persuaded – at least based on the current record – that LKQ's allegations of actual misappropriation of trade secrets rises above the speculative level. Accordingly, the Court concludes that LKQ has not met its burden of showing at least some likelihood of success on the merits under either California or Illinois law and need not definitively resolve which state's law applies to the ITSA claim at this time.

### b. Merits of LKQ's claims

Because restrictions on an employee's profession, trade, or business are void under California law, the Court concludes that LKQ has not met its burden of establishing a likelihood of success on the merits. Even assuming that *Edwards* has left open the possibility of an exception for restrictions based on the protection of trade secrets, LKQ has not made a sufficiently clear showing that Fengler is using trade secrets to warrant the entry of a temporary restraining order. Despite Fengler's protestations, LKQ contends that something suspicious is going on. But suspicion is not enough to warrant the extraordinary relief of a temporary restraining order. LKQ's allegations are speculative at this point and are contradicted by the affidavit that Fengler has submitted. In short, the facts before the Court are not enough for a clear showing that Fengler is using or will use LKQ's trade secrets.

LKQ's claim under the ITSA fails for the same reason. To prevail on a claim under the ITSA, LKQ must establish that the information at issue was (1) a trade secret, (2) that Fengler misappropriated the information, and (3) that he used it in his business. See *Strata Marketing, Inc. v. Murphy*, 740 N.E.2d 1166, 1176 (Ill. App. Ct. 1st Dist. 2000). Under Section 2(d) of the Act (765 ILCS 1065/2(d)), a trade secret is defined as follows:

> [I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

In determining whether a trade secret exists, Illinois courts also have looked to the following common law factors: (1) the extent to which the information is known outside of the employer's business; (2) the extent to which it is known by employees and others involved in the

business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his or her competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Delta Med. Sys. v. Mid-Am. Med. Sys., Inc.*, 772 N.E.2d 768, 780 (Ill. App. Ct. 1st Dist. 2002); see also *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003).

Here, although LKQ harbors suspicions about Fengler's conduct since he left the company, under the facts before it, the Court cannot conclude that LKQ has any non-speculative basis from which the Court could conclude that it has some likelihood of success on the merits even under the "admittedly low" standard that applies. *Girl Scouts of Manitou Council*, 549 F.3d at 1096. And having determined that LKQ has not shown any likelihood of success on the merits of either of its two claims, the Court denies LKQ's motion for a temporary restraining order [6]. With that said, the Court believes that there are a number of legal and factual issues in this case that remain open for further development, particularly in regard to (1) the extent to which California retains a narrow exception for restrictions based on trade secrets that might apply to LKQ's contract-based claims and (2) LKQ's suspicions that Fengler may be – contrary to the attestations in his affidavit – actually misappropriating trade secrets, which may be actionable in contract if such a claim remains viable under California law, or under the ITSA (or any comparable California statute). Because these are potentially meritorious claims that may entitle LKQ to preliminary or permanent injunctive relief, the Court concludes that expedited discovery is appropriate in this case. To that end, the parties are directed to meet and confer and to file by Wednesday, April 25, 2012, a joint status report setting forth a plan for expedited discovery. The

parties are also encouraged to consider whether a settlement conference would be useful. To the extent that the parties' status report suggests that the involvement of Magistrate Judge Cole might be helpful on the discovery or settlement fronts, or both, the Court will make an appropriate referral on an expedited basis.

### III.  Conclusion

For the foregoing reasons, the Court denies LKQ's motion for a temporary restraining order [6]. The parties are directed to meet and confer and to file by Wednesday, April 25, 2012, a joint status report setting forth a plan for expedited discovery and indicating whether they have mutual interest in an early settlement conference with Magistrate Judge Cole.

Dated:  April 23, 2012  _____

Robert M. Dow, Jr.
United States District Judge